Good morning. May it please the court. Kara Hartzler on behalf of Mr. Solorzano and Mr. Cornejo. There's two ways that we can know that the petitioner's 924C convictions rested on the residual clause. First, the jury actually acquitted them both of the Vicar Count, which means that the 924C necessarily rested on the RICO conspiracy, which only falls under the residual clause. And even if the 924C could rest on the Vicar Count, neither of the underlying predicates for that Vicar Count have an element of force. Therefore, they had to rely on the residual clause. Can we unpack this at the beginning? If the Supreme Court in Davis finds that the residual clause is constitutional, do we have to address any of those issues? I think you do, Your Honor, because if Davis says going forward that we no longer say that, you know, the residual clause can be constitutional if you use a fact-specific approach. Well, I have no idea what it's going to say, but let's assume for a moment that as you suggest, that the 924C conviction rests on the residual clause. Your primary argument here is that the residual clause is unconstitutional, as you hope the Supreme Court will tell us in Davis. Correct. But what if the Supreme Court disagrees with that? So I think the problem here is that at the time of this trial, the categorical approach was used. Well, but see, here's the problem. The Supreme Court's going to tell us what the residual clause means. If it tells us that the residual clause means something less than the categorical approach, you're still stuck, aren't you? Well, Your Honor. If the Supreme Court says a RICO conviction would support a categorical, would support the residual clause conviction, then you're out of luck, aren't you? I think what would happen is that then it would turn to a fact-based inquiry. And the problem here is that the jury didn't do a fact-based inquiry. Well, see, but here's my difficulty. We're now saying if that happened, this would happen. If this happened, that would happen. So I guess my question for both of you is this is all very interesting, and we ought to hear your arguments, but shouldn't we wait for the Supreme Court to tell us? And, Your Honor, I think the parties don't dispute that the court can wait a month and a half. That's not an issue. If the Supreme Court goes against us, they say that it's not necessarily unconstitutional, I think we can do briefing then. We can do a 28-J. And it will tell us what it means. Right. So we don't oppose holding this for a month and a half to see what happens in Davis. Could I ask you a couple of questions? Absolutely. One is a factual predicate. Sure. It's unusual. I mean, I'm a district judge, so it's unusual for me to see an agreement on sentencing entered into after someone's been convicted. There must be some background to this that I'm missing. You know, Your Honor, it did happen with a couple of the cases from this was a very large case with a lot of defendants, and the government may be actually able to explain that a little bit more because I wasn't here when that happened. It is a little unusual, and honestly, I don't know a lot more about it than that. And the other question that I have relates to whether it matters, whether 924C matters. The RICO can be predicated on a crime of violence under state or federal law, and the crimes at issue here, assault and attempted murder, are crimes of violence under the elements clause under state law. So I don't know why it matters what 924C says for that reason, and I'll get my last question in. Even if you knocked out the crime of violence issue altogether, it seems to me that the sentence on the RICO count, the maximum sentence that could have been imposed on the RICO count, would have upheld the sentence in this case in any event. So why do we have to argue about a plea waiver and what the Supreme Court is going to decide on 924C? I'll try and remember all of those. If I forget one of them, please remind me. So let's start with the last one. First of all, I think the question of what the statutory maximum was on the RICO conspiracy is not necessarily relevant. Now, we agree that if the court grants relief, they can go back and the district court could give him more time on the RICO conspiracy. But that doesn't necessarily mean that the 924C can stand up if, indeed, our arguments are correct. Now, going to the RICO conspiracy issue, I think Your Honor said something along the lines of the RICO would be a crime of violence. The fact is that it's RICO conspiracy, and the conspiracy is what takes it out of the elements clause and puts it into the residual clause because a conspiracy only requires an agreement. It doesn't have an element of force. Yeah, but the predicate acts for that do. In other words, their predicate acts are state law crimes of attempted murder and assault. And they're crimes of violence under California law. And so I don't see why it matters. And in terms of your agreement, which is another issue lurking here, they've agreed to a particular sentence. And if the RICO count is sufficient to sustain the sentence regardless of the 924C, why do we have to get into any of that? I think we get into it because we don't necessarily know that the district court would impose the same sentence for the RICO conspiracy if the 924C were gone. Well, and I guess technically you're entitled even to knock out the 924C count. It may not make any difference to your clients, but you're technically required to do it. That's right. And all we're saying here is, you know, we're not saying that they would automatically come out of this with a lower sentence. But I think they do have a right, as Judge Hurwitz says, to basically go back and be resentenced. Well, the judge accepted the, you know, he went along with the plea agreement. Why would he, and if the sentence, regardless of the outcome of the 924C case in the Supreme Court, why would he care? In other words, why would he say, oh, I'm not going to accept the agreement of the parties? I think he might. He might not care. He might care. But the issue is that we have to actually remand to see if he does care. And I get your point. And maybe if we wait for Davis, the government will be happy to vacate the 924C conviction, since the sentence would remain the same anyway. I've got a question about the waiver, though. Sure. There is a collateral attack and appeal waiver in this case. Correct. We recognize generally an exception to those when someone has gotten an illegal sentence. But you're not challenging the sentence in this case. Indeed, it appears that you all agreed on the sentence, or at least agreed to the parameters of the sentence. You're attacking the conviction in 924C. And so why shouldn't we find, why shouldn't we dismiss this appeal? I think our briefing said that we are attacking the conviction and the sentence. I know, but you're really not. In other words, I mean, I know your briefing says that, and they're terrific briefs. I compliment you on them. But really, on 924C, you're only attacking the conviction, because you're not saying the sentence exceeded statutory guidelines or even was unreasonable under the circumstances. What you're really saying is I shouldn't have been convicted of this offense. I think it's really hard to untangle them. I can untangle them very easily. I just did. I just did. So assuming my untangling works, why haven't you waived your right to appeal? I think we didn't waive our right to appeal because this is the same situation as in Torres. In Torres, there was a Johnson claim, and they said this is an illegal sentence. And in my understanding, I believe, that was an act of case. No, but in Torres, the difference was that the Johnson issue went to sentencing. It went to because it was a guideline. The question was what facts could you use to enhance a sentence or to increase a sentence. In this case, 924C being a strange animal, the Johnson issue goes to whether or not you actually committed the crime. And I think you've waived your right to claim that you didn't commit the crime. So that's why I'm having difficulty with it. Your Honor, I think 924C establishes a mandatory minimum. And in Alene, the Supreme Court said that we treat mandatory minimums the same way that we would treat anything else under an apprentice sentencing enhancement sort of situation. Sure, sure. I think Alene gets us to where the Court may have some doubts. Does it? I mean, I can't find any case in which a party has waived their right to appeal, but nonetheless gets to come up and say I was unjustly convicted. Can you find one? I don't have one off the top of my head. No, you can bring collateral attacks for actual innocence and things like that, but we're dealing with an appeal here. I just, I think I disagree with Your Honor that. I understand you characterize this differently. Yeah, but I understand your point. And I'll look for a case, and if I can find one, I'll certainly turn it to you. But you're actually arguing that he didn't commit the crime, any crime. That's right. That's right. We're arguing. And that, therefore, the sentence, he's being sentenced for a crime that he didn't commit. Exactly. And that comes to my mind under the constitutional exception that allows appeals from waivers. I agree 100%. And I don't, but it's okay. Let me, in just a minute or two, let me try to sum up our argument on the predicate offenses underlying and to see if I can convince Your Honor that they actually don't rely on the force clause. And here's my argument in a nutshell. I'm not sure whether you look at California law to decide this. If you look at California law, then the homicide doesn't have an element of force for all the cases we cite in our brief. Doesn't the attempted, doesn't the aggravated assault have an element of force? We've already decided that, haven't we? Yes. If you're looking at California law, I agree we lose. And California law is one of the predicate offenses for this strange finding that the jury made, even though it acquitted your clients of vicar, the jury said, but nonetheless they brandished a firearm in relation to vicar. Right. But the jury wasn't instructed on California law. The jury only had the instructions before them. And in all the cases that I've seen. But isn't it an issue of law? In other words, if it's a categorical analysis, as you suggest, why would the jury be instructed on California law? You're saying they weren't instructed about whether or not he actually committed those crimes in California law? I'm saying they weren't instructed on the mens rea that's necessary to satisfy the instructions. I'm saying that this court, in all of its 245 cases, has relied on California law saying that recklessness and negligence is not enough. The jury was never instructed on that. Okay, but my question is, in order to commit attempted aggravated assault, as a matter of law, the crime requires intent. And I think in California, all attempt crimes require intent. Then what difference would it make whether the jury was instructed on it? Your Honor, it was actually, I believe, assault with a deadly weapon. I'm sorry. And then attempted murder. Right. So attempted murder, I think, requires intent. So, Your Honor, I'm actually going to, I was thinking about this last night, and I found a California case, and I can 20H it, but I want to tell you about it really quickly. It's called People v. Angelo, and it was a situation where a person was charged with attempted murder because she basically didn't feed her child. Her child was malnourished. And she was charged with this, and that would be a perfect example of how you can be convicted of attempted murder under California law without the usual. Switch to the other crime. Can you commit aggravated assault? Requires intent, does it not? Switch to the other crime. If you look at California law, we lose. I agree. So if one of the, now here, now we get down to the strange thing the judge did. Right. But you didn't get separate verdicts on those two. So if one of the two would support the vicar, a vicar finding, and let's put aside for a second the inconsistent verdicts issue. If one of the two would support it, then isn't that enough? No. Why? Because this is not a harmlessness analysis. This is a situation where the jury decided, and it decided on one of them, we just don't know which. But aren't you required if there's sufficient evidence on one of the two, aren't you stuck unless you've asked for separate verdicts? No. Because this is a situation where the jury actually made a decision, it's just we don't know which one it is. And because we don't know which one it is, we have to assume that it was the one that relied on the original one. Tell me what case supports that proposition. Well, first of all, I think that there's a line of harmlessness cases, but that this is not a harmlessness case. Yeah, but there's a line of cases that say, I think, when a jury is instructed on two alternate ways and you don't ask for a special verdict and the jury finds you guilty and the evidence supports one of the two, you can't come in and say it doesn't support the other. I think I would say Moncrief says that we have to look at the least of the acts criminalized under the VICAR, and the least of the acts criminalized would be whichever one fell under the residual clause. Okay. And I know we've taken you aside on this. That's fine. What I really want to hear from the parties on this, and unfortunately we've used all your time, is this strange thing the judge did of not tying the special verdicts to the counts. I mean, in a perfect world the judge would have said, do you find him guilty of RICO? If so, make these other two findings. Do you find him guilty of VICAR? If so, make this other finding. Correct. What do we do with this, I call it finding number five, the last of the findings. What do we do with that? I think that's a great question. I think what happened here is that we had alternative jury findings, and that may have resulted in part because the jury instructions were a little confusing. The judge said, if you find the crimes of violence, crimes plural. So because of that, I think that Your Honor doesn't have to rely on both. Basically, you can say this is an alternative jury finding. Because it's an alternative jury finding, we have to assume that it was a finding on the RICO conspiracy, and therefore you can't rely on it. You can't be, see, Annette, I know your time's up, but here's why this case is so maddening, in addition to the issue that Judge Corman raises, is that it probably doesn't make any difference to your clients in the end. The last finding is clearly made in relation to count 20, which is not the RICO conspiracy, but the Vicker claim. It's worded maddening. I mean, I'm a lawyer and I have trouble understanding it, but at least lawyers understand what it says. I have no idea what the jury would have understood it to do. But if you read it as a lawyer, it basically says we found that they are guilty of brandishing a firearm in relation to Vicker. Well, it said both. It said RICO conspiracy and Vicker. Well, does it? Yes, it does. Absolutely, Your Honor. And I think that's a really important point. And I will point you to. It's on 241. Let's take a look. So I'm looking actually, and I apologize, the ERs were one page off. But if you look at the ER at either 236 or 237, this says first you have to find that the defendant committed the crime. No, those are the instructions. I'm looking at the verdict. Oh, you're looking at the verdict. I'm sorry. Okay. Look at the verdict. Sure. The last one of the verdict, that finding is solely in relation to the Vicker count. Right. But the one right above it is solely in relation to the RICO conspiracy. Forget about the one above it. I don't think it helps anybody. I'm thinking about that one. What do we do with that one? I think the last two verdicts are alternative findings. And I honestly, you know, I think it's a very difficult situation, but because they're alternative findings, and that's different than a verdict, I don't think you rely on both of them. And you have to assume that it's the RICO conspiracy that you rely on. The reason that I discount the significance of number four is that that ties back into the Johnson issue. Because if, in fact, they didn't commit, if, in fact, there's no residual clause violation there because of the Johnson. I think my big picture take on this, Your Honor, is because we don't know what happened, you have to assume that they relied on the least conduct criminalized that they could have been found or convicted of, and that goes in our favor. Thank you. All right. Thank you, Counsel. Good morning, Your Honors, and may it please the Court, Helen Hong on behalf of the United States. As an initial matter, I do agree with Your Honor's observation that we can wait for the Supreme Court to decide Davis to determine whether the residual clause A925. Because if Davis comes out against the government. If Davis comes out against the government. What do we have to do in this case? Don't we have to remit? At that point, the issues that we have raised here will fully be before Your Honors. And so the question then will be whether Count 20 did rest on the Vicar offenses and whether those Vicar offenses are actually elements clause or formal. Well, but wouldn't it also put in jeopardy your RICO conviction? The RICO conviction, the 924C count here based on the. Right, I'm sorry. We put in jeopardy the use of your RICO conviction to support the 924C count. Yes, Your Honor. You could still rely on the state crimes of violence. Yes, the Vicar offenses. So the attempted murder and the assault with a deadly weapon. And that takes us right to what do we do with this? We have a jury that acquits on Vicar and then makes a special finding that somebody brandished a firearm in relation to Vicar. What do we do with that finding and the verdict? And that's precisely the situation this court confronted in the United States versus Bracey. No, no, Bracey involved two inconsistent verdicts. We just had a 924C verdict and we had an underlying Vicar verdict, right? Correct, Your Honor. And they were inconsistent. The actual verdicts are consistent. You can acquit somebody of Vicar and find them guilty of 924C, I suppose, on some other theory. But the problem is here you're relying not on the verdicts. To put it differently, under the verdicts you lose because they were acquitted of Vicar. So why is this finding the same as a verdict? And it's because the underlying crime, the predicate felony, is a foundational piece or an element for the 924C offense. Well, but in Bracey we had a different situation. I mean, here we have your 924C either being based on the residual clause, which for purposes of my question you should assume is unconstitutional, or the Vicar finding. In Bracey we didn't have that. So Bracey it was just two flat-out inconsistent verdicts. He didn't do it, he did do it. Here we don't know on what basis the jury found 924C. I think in Powell and in Bracey itself, the court said that acquittal on the underlying crime of violence does not render the conviction on the 924C that rests on that crime of violence improper. Right, but acquittal does not if the jury based its conviction on that offense. In this case the jury was told either or. And then when it got to the individual offenses it said not this one. So it's different in Powell and Bracey, isn't it? I think they're the same, Your Honor, and the reason is this. Under 924C the jury was asked, based on the indictment, did the defendants discharge a firearm in connection with a RICO conspiracy and did they discharge the firearm in connection with these Vicar offenses. The jury concluded based on the verdict form unanimously that it was both crimes, that the discharge of the firearm was in relation to both the RICO as well as the Vicar offense. No, I understand what the jury did. And those findings on their face would have suggested that they should have convicted them of the Vicar offense because finding number five is basically you're guilty of Vicar. But they found them not guilty of Vicar. And so my question is, under those circumstances, you want to elevate that last finding into a verdict. And that's a little different than Bracey and Powell. Powell and Bracey just deal with the inconsistencies of verdicts. What do we do with a finding? Well, imagine in this case that there was no RICO conspiracy that grounded the 924C offense. So the jury only returned a verdict saying that the defendant was guilty on count 20 where the underlying crime of violence was the Vicar offense. In that situation, we're no different than what the Supreme Court confronted in Powell. And really it's squarely what this court confronted in Bracey where the 924C offense was based on a crime of violence for which the defendant was acquitted. And in those circumstances, both the Supreme Court and this court teaches that those inconsistencies are not something that this court can review. Yeah, the difference here is that the 924C may well have been based on the residual clause. See, I think if you make it a clean example, as in Bracey and Powell, it's a pretty easy case. The problem in this case is we don't know which of the two. And so now you're saying to us even if you throw out the one they may have relied on, they also may have relied on the other, and you can, notwithstanding their acquittal, their finding on number five allows a conviction for 924C. And I can't find a case that goes down two levels. Right, and I guess I would say that what we know from the jury verdicts is that they unanimously concluded that the discharge was in connection with both crimes. So we do know that the sentence was based on the residual clause as it relates to the RICO conspiracy. I found these instructions terribly confusing, in particular the jury verdicts. In my mind, the judge should have said, did they commit RICO? And if so, did they commit Vicar? And if so, but he didn't. And given the way these instructions read, do we have any real confidence that the jury actually found that he discharged a firearm in connection with Vicar? The last wording of the last one is very strange. And I think you do have confidence from the jury instructions themselves. And so this is what Ms. Hartzler has identified as sort of an incorrect jury instruction. But in the jury instructions, the jury was asked to find whether the defendants discharged the firearm. They must have unanimously concluded that they had. And was it in connection with a crime of violence? And the jury in this case, we know, found it was in connection with two separate crimes of violence, one being the RICO conspiracy, the second being the Vicar. What the Vicar verdict does not show is whether the jury was. . . Right, if the RICO conspiracy is not a crime of violence, it's not categorically a crime of violence, correct? Under the elements clause, we're not contending that. Right, so unless it's under the residual clause, you lose on that. I don't understand your answer. Can't RICO become and affect the crime of violence where the predicate acts are crimes of violence? Yes, Your Honor, for the RICO substantive offense, that's definitely true. Not for RICO conspiracy. Here we have a RICO conspiracy. And the elements of the RICO conspiracy, at least in this case, we are not contending support the elements clause, crime of violence. The jury wasn't instructed in this case that in order to convict a RICO conspiracy, they had to find that the defendants committed a crime, a particular crime for which violence is an element. And I think Your Honor had previously asked about a finding about two predicate racketeering acts, for example. That's what would be required in the substantive RICO conviction. We didn't require that of the jury in this case because it was a RICO conspiracy. Could I ask you the first question that I asked your adversary? I don't understand. This is an unusual agreement where people enter into an agreement on sentencing after someone's been convicted. What's the background, if you know? Sure. I mean, my understanding is the defendants were facing state charges as well. And it was a lot of time that they were facing on the state charges for the same exact conduct that was the basis for the RICO conspiracy conviction, as well as the brandishing and the discharge conviction. As a global resolution where the defendants would agree to plead guilty on the state side, and ultimately they did and obtained and received 18-year concurrent sentences to the federal sentences that were imposed here, that in consideration for that, as well as, and this is important for the purposes of this appeal, their agreement to waive any attack on their trial convictions, as well as collateral attack of the conviction and sentence itself, the United States lowered its sentencing recommendations dramatically. And this was acceptable to the judge? It was, Your Honor. And that sentence could have been supported just on the RICO conviction? It could have been, Your Honor. We agree, though, that we can't look at what would have been imposed on the RICO conspiracy to say that there's no harm, no foul, we're not going to look at that? Theoretically, you're right. But it seems to me that given now the background of this plea, they were basically bargaining for a sentence in order to deal with their state law problems. And so they didn't care at all what underlying crimes justified it. They would have taken it if it were, you know, if it were spinning on the sidewalk. I agree, Your Honor. I think had this been a global agreement of 20 years on count one alone, we wouldn't be here at all. It was definitely an understanding that the global time that the defendant would spend in custody would be 20 years. And why did you care, by the way? Why didn't you just take, why do you have to, why did you, I mean, you're the government. Why did the government care? Why didn't they just rely on the RICO case to justify it? It seems to me this is a self-created problem. Right. I will say this. He was convicted of the 924C offense, which requires a mandatory consecutive 10-year term for the discharge of the firearm. And as a result, sort of calibrating for that 10 years, 10 years was then allocated to the RICO conspiracy itself. But he didn't care about how you chopped it up. From what you described, this was a pure bargain over a sentence. Agreed, Your Honor. And at the time in 2013, there was no suspicion that 924C3B would ever be constitutionally challenged because Johnson had not yet been decided. Nor did Maya. And so that's the trend. And here we are. But do you, what is your position on whether this is actually a challenge to the conviction as opposed to the sentence? For the purposes of the plea waiver, frankly, I don't think it actually makes a difference as to whether it's a challenge to the sentence. Assume that it does make a difference. Okay. If it does make a difference in this, it would be a challenge to the conviction itself. And if that's the distinction Your Honor is relying on, then certainly Torres is a sentencing case because it was a career offender guideline challenge. There are cases where plea waivers have been upheld. Slessor v. United States from the Third Circuit is one. And I'm happy to provide a 28J that was in the context of sentencing. So it was in the ACCA context with 924E where the sentence was 15 years. Right. But those were all cases dealing with the sentence. It may well be that this isn't an illegal sentence. But those are, but how can this be an attack on the sentence? The sentence having been negotiated, agreed to, it's an attack on the conviction of 924C, isn't it? I agree. I think that this is properly characterized as a challenge to the conviction of 924C. So now get to the point Judge Corman raised. The defendants or the defendant in each case is saying, well, but my 924C conviction is unconstitutional because of Johnson. Is that an exception to their waiver? No, Your Honor. Let me just ask. Isn't he saying that, the defendant saying that I'm not guilty of a crime and therefore you can't sentence me for something that is not a crime? And doesn't that come within the exception to the rule about the enforcement of agreements? That's precisely what the court considered in Worthen. So it was a 924J sentence in conviction for discharge of a firearm that led to death. And what the court in Worthen determined was that the appeal waiver and the actual collateral attack waiver was still valid. I will say we are in the collateral attack context here, Your Honor. Right, because it's a 2255, yeah. Right. But the waivers are the same, I suppose. The effect of the waiver is the same. So I don't understand why we're here at all other than just as an intellectual matter because surely these defendants don't want to undo the whole sentencing bargain and jeopardize themselves to a much longer sentence. And it just seems to me that we're here only because of the possibility that 924C is going to be the residual clause is likely to be struck down. But I don't know. If I were you, I'm not sure I'd be pursuing this appeal. And we're here because the petitions were filed, Your Honor. And I would note, too, from the court's observation, that waiting for Davis may avoid an instant and higher intellectual exercise. I think there are some interesting legal issues about whether attempted murder and assault with a deadly weapon is an elements clause and first clause crime of violence. And I will say since the 18 months have elapsed that the briefing has been complete, there's been substantial developments in the case law that we haven't been able to address. And so, at a minimum, I think staying this case, like many of the other cases that have been stayed pending Begay and Davis, makes sense in this context, given this case. Or we could dismiss the appeal. Or Your Honor could dismiss the appeal. Or dismiss the waiver. And your friend's clients would be in exactly the same position that they would be if they later won. And that's correct. And at that point, the conversation about Judge Ward's laws, observation about whether it makes sense to attack this, is another one that can be revisited in the context of Davis as well. I just want to be sure I understood your answer to the earlier question. I want to be sure I remember it. Did they get concurrent sentences in state court? They did, Your Honor. 18 year concurrent terms. So this whole thing is pointless. Even if they win here. If they got the whole federal conviction thrown out, theoretically they would still be serving the same exact sentence in the probably not as fine a facility. And I'll note, I suspect that they'll receive the same federal sentence on the RICO conspiracy conviction anyway, given the aggravated nature of their conduct. I see I'm out of time, Your Honors, unless you have any other questions. By the way, this is a great intellectual exercise on both sides. So I don't blame anybody for bringing the issues to us. The question is whether we have to work our brains very hard in resolving them. All right. Thank you. All right. Thank you very much, counsel. Thank you to both of you for your excellent arguments. And I'm sure that we will be seeing further briefing on this case sometime soon. So thank you very much. Solorzano and Cornejo are submitted. We'll take up Nunes v. Sachs.
judges: Wardlaw, Hurwitz, Korman